JET/JAB: SEPTEMBER 2019
GJ#22

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| **TIERZAH MAPSON, ELISA** ) | |
| **MAPSON, and CHARIS MAPSON,** ) | |
| **Defendants** ) | |

## INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At all times relevant to this Indictment,

**I.    Individuals and Relationships**

1. Defendants **TIERZAH MAPSON, ELISA MAPSON,** and **CHARIS MAPSON** were sisters who resided primarily in and around Tulsa, Oklahoma.

2. Defendant **TIERZAH MAPSON** was the biological mother of a minor child ("Minor Child") whose biological father was a man ("Victim 1") with whom **TIERZAH MAPSON** had an intimate relationship in North Carolina in approximately 2012.

3. There existed a 2014 North Carolina state court order determining the custody rights of **TIERZAH MAPSON** and Victim 1 regarding Minor Child. That order provided for joint legal custody with **TIERZAH MAPSON** having primary

physical custody of Minor Child and Victim 1 having a defined visitation schedule that could be modified by agreement.

4. Minor Child resided with **TIERZAH MAPSON** in the area in and around Tulsa, Oklahoma.

5. Victim 1 and his wife ("Victim 2") resided in Winter Park, Florida, a suburb of Orlando, Florida.

6. **ELISA MAPSON** was the registered owner of a 2009 white 4-door Ford F-150 truck, bearing Oklahoma license plate number EPT-597 ("the white Ford truck").

7. **CHARIS MAPSON** previously served in the United States Marine Corps from 2007 through 2011, during which she was required to demonstrate a certain skill level in rifle marksmanship.

**II. Background Concerning Domestic Violence and Stalking Laws**

8. In passing laws criminalizing interstate travel to commit stalking or domestic violence, the United States Congress protected victims falling into the categories of "spouse," "intimate partner," or "dating partner" of the criminal actor, and, under the stalking statute, Congress extended protection beyond the target of the stalking to the "spouse or intimate partner" of the target.

9. For purposes of applying the Interstate Domestic Violence statute, 18 U.S.C. § 2261, to the allegations herein, "intimate partner" includes "a person who

shares a child in common with the abuser" or "a person who is or has been in a social relationship of a romantic or intimate nature with the abuser."  18 U.S.C. § 2266(7)(A)(i).

10. The Stalking statute, 18 U.S.C. § 2261A, is much broader, covering not only the primary target of the stalking conduct but also a "spouse or intimate partner" of the primary target if the conduct puts the target in fear of the death or serious bodily injury of his or her spouse or intimate partner.  The Stalking statute also directly prohibits causing, attempting to cause, or engaging in conduct that would reasonably be expected to cause the target's spouse or intimate partner to suffer substantial emotional distress.  18 U.S.C. § 2261A(1)(A)(iii) and (1)(B).

11. Congress further defined "spouse or intimate partner" to include "any other person similarly situated to a spouse who is protected by the domestic or family violence laws of the State . . . in which the injury occurred."  18 U.S.C. § 2266(7)(B). Alabama Code §13A-6-130, *et seq.*, criminalizes domestic violence visited upon someone "with whom the defendant has a child in common."

**COUNT ONE:  [18 U.S.C. § 371]**

The Grand Jury further charges that:

1. Paragraphs 1 through 11 of the Introduction section of this Indictment are realleged and incorporated into this Count, as if fully restated herein.

**The Conspiracy**

2.    From on or about June 17, 2018, through on or about June 22, 2018, in Walker County within the Northern District of Alabama, and elsewhere, the Defendants,

**TIERZAH MAPSON, ELISA MAPSON, and CHARIS MAPSON,**

and others known and unknown to the Grand Jury, did willfully, knowingly, and unlawfully combine, conspire, confederate, and agree together with each other and other persons known and unknown to the Grand Jury to commit certain offenses against the United States, that is:

    a. to violate Title 18 United States Code, Section 2261(a)(1), by traveling in interstate commerce with the intent to kill, injure, harass, and intimidate an intimate partner and dating partner, and in the course of and as a result of such travel and presence, committing and attempting to commit a crime of violence against that intimate partner and dating partner;

    b. to violate Title 18 United States Code, Section 2261(a)(2), by causing an intimate partner or dating partner to travel in interstate commerce by coercion, duress, and fraud, and in the course of, as a result of, and to facilitate such conduct and travel, committing and attempting to commit a crime of violence against that intimate partner and dating partner;

c. to violate Title 18 United States Code, Section 2261A(1), by traveling in interstate commerce with the intent to kill, injure, harass, and intimidate another person, and in the course of, and as a result of, such travel and presence engaging in conduct that (i) places that person in reasonable fear of death and serious bodily injury to himself and his spouse and intimate partner, and (ii) causes, attempts to cause, and would be reasonably expected to cause substantial emotional distress to that person and the spouse and intimate partner of that person; and

d. to violate Title 18 United States Code, Section 2261A(2), by, with the intent to kill, injure, harass, intimidate, and place under surveillance with the intent to kill, injure, harass, and intimidate another person, using any interactive computer service and electronic communication system of interstate commerce and any other facility of interstate commerce to engage in a course of conduct that (i) places that person in reasonable fear of the death and serious bodily injury himself and the spouse and intimate partner of that person and (ii) causes, attempts to cause, and would be reasonably expected to cause substantial emotional distress to that person and the spouse and intimate partner of that person.

  e. to violate Title 18 United States Code, Section 924(c), by possessing and discharging a firearm in furtherance of a crime of violence for which they may be prosecuted in a Court of the United States, that is, Interstate Domestic Violence and Stalking, as charged in Counts Two and Three of this Indictment.

All in violation of Title 18, United States Code, Sections 371, 2261(a)(1), 2261(a)(2), 2261A(1), 2261A(2), and 924(c).

## Objectives of the Conspiracy

3. It was the objective of the conspiracy to kill, injure, harass, intimidate, and place under surveillance Victim 1 and Victim 2.

## Manner and Means

4. It was a part of the conspiracy that Defendant **TIERZAH MAPSON**, by coercion, duress, and fraud, caused Victim 1 and Victim 2 to travel across state lines to Eldridge, Alabama, under the pretense that Defendant **TIERZAH MAPSON** would transfer temporary physical custody of Minor Child to Victim 1 for a period of visitation.

5. It was further a part of the conspiracy that a conspirator used Defendant **TIERZAH MAPSON's** cellphone to lure Victim 1 and Victim 2 to 54240 Highway 13 Eldridge, AL 35554 ("the meeting location"), on a particular date and at a particular time under the guise that this was the location where the custodial

exchange would occur.

6. It was further a part of the conspiracy that Defendant **TIERZAH MAPSON** did not bring Minor Child to the meeting location for the custodial exchange but rather remained at a location in Florida where she and Defendant **ELISA MAPSON** were staying temporarily.

7. It was further a part of the conspiracy that Defendant **ELISA MAPSON** would leave Florida and drive through Georgia to Eldridge, Alabama, to participate in the planned shooting at, and of, Victim 1 and Victim 2.

8. It was further a part of the conspiracy that Defendant **TIERZAH MAPSON** used her cellphone to assist Defendant **ELISA MAPSON** in **ELISA MAPSON**'s travel to Eldridge, Alabama.

9. It was further a part of the conspiracy that Defendant **CHARIS MAPSON** drove from Oklahoma through Arkansas to Eldridge, Alabama, to participate in the planned shooting at, and of, Victim 1 and Victim 2.

10. It was further a part of the conspiracy that Defendants **TIERZAH MAPSON**, **CHARIS MAPSON,** and **ELISA MAPSON** used their cellphones to communicate and coordinate efforts to accomplish the objectives of the conspiracy.

11. It was further a part of the conspiracy that on June 18, 2018, the date of the custodial exchange, Defendant **TIERZAH MAPSON** repeatedly engaged in false text communications with Victim 1 and Victim 2 to lull them into remaining at

the Eldridge, Alabama, address several hours beyond the originally scheduled meeting time.

12.     It was further a part of the conspiracy that, on June 18, 2018, while Victim 1 and Victim 2 waited for the arrival of Defendant **TIERZAH MAPSON** and Minor Child, one or more of the conspirators fired a gun at the vehicle occupied by Victim 1 and Victim 2 in Eldridge, Alabama, striking Victim 1.

### Overt Acts

13.     In furtherance of the conspiracy and to achieve the objects thereof, Defendants **TIERZAH MAPSON, ELISA MAPSON, CHARIS MAPSON,** and others committed and caused to be committed the following overt acts, among others, in the Northern District of Alabama and elsewhere:

14.     On May 31, 2018, **ELISA MAPSON** began renting a campsite at Daytona's Endless Summer Campground ("the Campground"), which is located in Port Orange, Florida, immediately south of Daytona Beach. The Campground is approximately 53 miles from Victim 1's residence in Winter Park, Florida.

15.     In the first half of June 2018, **TIERZAH MAPSON** agreed to transfer physical custody of Minor Child to Victim 1 for two weeks of visitation starting later that month.

16.     On June 17, 2018, **ELISA MAPSON** created a document in the notes folder on her cellphone, which listed the following items:  disguises, ladder,

climbing rope, binoculars, "write down what to text Thorn," luck beads, bless and luck necklace, gloves, and "after avoid Ala."

17.     At 9:41 a.m.[1] central time on June 17, 2018, **ELISA MAPSON** used her cellphone to call **CHARIS MAPSON**'s cellphone for a nine-minute phone call.

18.     At 10:35 a.m. central time on June 17, 2018, **ELISA MAPSON** used her cellphone to search for "gastations in Alabama."

19.     Sometime prior to 12:00 p.m. central time on June 17, 2018, **CHARIS MAPSON** began traveling from Tulsa, Oklahoma, to Alabama.

20.     At approximately 9:26 p.m. central time on June 17, 2018, **ELISA MAPSON** sent a text from her cellphone to **CHARIS MAPSON** identifying the meeting location: "54240 Highway 13 Eldridge, AL 35554."

21.     **CHARIS MAPSON** arrived in the area near Eldridge, Alabama, around 10:45 p.m. central time on June 17, 2018.

22.     At approximately 10:04 p.m. central time on June 17, 2018, **TIERZAH MAPSON** used her cellphone to text Victim 1, advising him that she would meet him at "54240 Highway 13 Eldridge, AL 35554" to transfer custody of Minor Child. Eldridge is a small, rural Walker County community approximately two miles from Interstate 22 and 22 miles northwest of Jasper.

23.     At 12:30 a.m. eastern time on June 18, 2018, **ELISA MAPSON**

---

[1] Unless otherwise noted, all times have been adjusted to central time even if the activity occurred in the eastern time zone.

purchased two pair of binoculars at a Port Orange, Florida Walmart, which was near the Endless Summer Campground where she was renting a campsite.

24. Sometime after 4:30 a.m. central time on June 18, 2018, **ELISA MAPSON** began traveling in the white Ford truck toward Eldridge, Alabama, where **TIERZAH MAPSON** had advised Victim 1 to meet her for the custody exchange.

25. At 4:42 a.m. central time on June 18, 2018, **ELISA MAPSON** used her cellphone to text words of encouragement to **CHARIS MAPSON**, saying "it's just Halo," an apparent reference to a first-person shooter video game.

26. At some point before **ELISA MAPSON** drove the white Ford truck to Alabama on June 18, 2018, the conspirators caused black horizontal stripes to be installed across the tailgate of the truck to alter its appearance.

27. Throughout the day on June 18, 2018, **ELISA MAPSON** traveled in the white Ford truck through Georgia and Alabama on a route that would take her to the meeting location.

28. At 10:07 a.m. central time, **ELISA MAPSON** texted **TIERZAH MAPSON**, "Macon." At 10:11 a.m. central time, **TIERZAH MAPSON** replied with a text that read, "Map say about 4 hours and 30 min."

29. At 3:02 p.m. central time on June 18, 2018, **TIERZAH MAPSON** used her cellphone to text Victim 1, who was waiting on her arrival at the meeting location to advise him that she "ran into traffic and will be running a few hours late. Right

now it looks like maybe an hour & half or so."

30. At 4:39 p.m. central time on June 18, 2018, a white truck was driven into the parking lot of a church situated approximately 200 yards away from the meeting location. The truck disappeared behind the church, where there is a narrow alley between the church and a wooded hill rising behind it.

31. At 5:18 p.m. central time on June 18, 2018, in response to a text from Victim 1 asking about her location, **TIERZAH MAPSON** used her cellphone to text him, "Sorry, a little while longer.  [Minor Child] got car sick and puked."

32. At approximately 5:40 p.m. central time, the conspirators caused a firearm to be discharged multiple times in the direction of Victim 1 and Victim 2 as they sat in their vehicle at the meeting location. One round entered the vehicle and struck Victim 1.

33. At 5:42 p.m. central time on June 18, 2018, the white truck reappeared from behind the church and drove onto a nearby highway, traveling away from the meeting location.

34. At 6:52 p.m. central time on June 18, 2018, in response to a text from Victim 1 advising that the "meeting place has changed due to a minor emergency" and providing a new meeting address in Tuscaloosa, **TIERZAH MAPSON** used her cellphone to reply to Victim 1's text, telling him that "we drove past it since my sister is so used to driving all the way to FL.  We'll just meet you in FL as usual."

35. At 10:16 p.m. central time on June 18, 2018, **CHARIS MAPSON** texted **ELISA MAPSON** "out" to which **ELISA MAPSON** responded "good."

36. **CHARIS MAPSON** and **ELISA MAPSON** used their cellphones approximately 90 times to call and text each other on June 18, 2018, with a gap in contact between 2:23 p.m. central and 7:11 p.m. central.

37. **TIERZAH MAPSON** and **ELISA MAPSON** used their cellphones approximately 75 times to call and text each other on June 18, 2018, with a gap in contact occurring between 4:48 p.m. central time and at 6:39 p.m. central, when attempted contacts resumed.

38. On the evening of June 18, 2018, the white Ford truck was driven from Alabama back to Florida.

39. At some point after the white Ford truck returned to Florida but before June 23, 2018, the conspirators caused the black horizontal stripes to be removed from the truck's tailgate.

40. On or about June 22, 2018, during and in furtherance of the conspiracy, **TIERZAH MAPSON** told agents and or task force agents of the Federal Bureau of Investigation ("agents") that on June 18, 2018 she drove from Oklahoma to Daytona Beach, Florida.  After being confronted with the fact that the white Ford truck had been tracked from Florida to Alabama on June 18, 2018, **TIERZAH MAPSON** retracted her claim and then asserted that her stalker took the truck from Daytona to

Alabama without permission to "talk" with Victim 1.  **TIERZAH MAPSON** further told agents that she directed Victim 1 to the location where he would meet with the stalker.

41.   On or about June 22, 2018, during and in furtherance of the conspiracy, **ELISA MAPSON** told FBI agents that while driving to Alabama to meet Victim 1, she missed a turn and did not realize it until she arrived in Macon, Georgia, at which time they continued driving on to Florida.  When an agent asserted that her story was not true, she admitted to telling a friend about an alleged threat Victim 1 made regarding the Minor Child and to loaning her white Ford truck to the friend after he said that he was going to shoot Victim 1.  She then told the agents that she knew the friend was going to meet Victim 1 in place of her and **TIERZAH MAPSON**.

42.   On or about July 10, 2019, **CHARIS MAPSON** told FBI agents that she was at work when Victim 1 was shot.  She also stated that she did not go to Alabama in the summer of 2018 and that she did not give her phone to anyone who went to Alabama in the summer of 2018.

All in violation of Title 18, United States Code, Sections 371, 2261, 2261A and 924(c)(1)(A).


**COUNT TWO:  [18 U.S.C. § 2261(a)(1)]**

Paragraphs 1 through 11 of the Introduction section of this Indictment and

paragraphs 1 through 42 of Count One of this Indictment are realleged and incorporated into this Count, as if fully restated herein.

The Grand Jury charges:

That on or about June 17 and 18, 2018, in Walker County, within the Northern District of Alabama, the Defendants,

**TIERZAH MAPSON, ELISA MAPSON, and CHARIS MAPSON,**

knowingly traveled in interstate commerce with the intent to kill, injure, harass, and intimidate an intimate partner and dating partner, that is, Victim 1, and in the course of and as a result of such travel and presence, committed and attempted to commit a crime of violence against that intimate partner and dating partner, that is, Murder in violation of Alabama Code Section 13A-6-2, Domestic Violence, First Degree, in violation of Alabama Code Section 13A-6-130, and Domestic Violence, Second Degree, in violation of Alabama Code Section 13A-6-131.

All in violation of Title 18, United States Code, Sections 2261(a)(1).

**COUNT THREE:**  **[18 U.S.C. § 2261(a)(2)]**

Paragraphs 1 through 11 of the Introduction section of this Indictment and paragraphs 1 through 42 of Count One of this Indictment are realleged and incorporated into this Count, as if fully restated herein.

The Grand Jury charges:

That on or about June 17 and 18, 2018, in Walker County, within the Northern District of Alabama, the Defendants,

**TIERZAH MAPSON, ELISA MAPSON, and CHARIS MAPSON,**

knowingly caused an intimate partner and dating partner, that is, Victim 1, to travel in interstate commerce by coercion, duress, and fraud, and in the course of, as a result of, and to facilitate such conduct and travel, committed and attempted to commit a crime of violence against that intimate partner and dating partner, that is, Murder in violation of Alabama Code Section 13A-6-2, Domestic Violence, First Degree, in violation of Alabama Code Section 13A-6-130, and Domestic Violence, Second Degree, in violation of Alabama Code Section 13A-6-131.

All in violation of Title 18, United States Code, Sections 2261(a)(2).

**COUNT FOUR:**  **[18 U.S.C. § 2261A(1)]**

Paragraphs 1 through 11 of the Introduction section of this indictment and paragraphs 1 through 42 of Count One of this Indictment are realleged and incorporated into this Count, as if fully restated herein.

The Grand Jury charges:

That on or about June 17 and 18, 2018, in Walker County, within the Northern District of Alabama, the Defendants,

**TIERZAH MAPSON, ELISA MAPSON, and CHARIS MAPSON,**

knowingly traveled in interstate commerce with the intent to kill, injure, harass, and intimidate another person, and in the course of, and as a result of, such travel and presence engaged in conduct that (i) placed that person, that is, Victim 1, in reasonable fear of death and serious bodily injury to himself and his spouse and intimate partner, and (ii) caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that person, that is, Victim 1, and his spouse and intimate partner, that is, Victim 2.

All in violation of Title 18, United States Code, Sections 2261A(1).

## COUNT FIVE:  [18 U.S.C. § 2261A(2)]

Paragraphs 1 through 11 of the Introduction section of this indictment and paragraphs 1 through 42 of Count One of this Indictment are realleged and incorporated into this Count, as if fully restated herein.

The Grand Jury charges:

That on or about June 17 and 18, 2018, in Walker County, within the Northern District of Alabama, the Defendants,

**TIERZAH MAPSON, ELISA MAPSON, and CHARIS MAPSON,**

knowingly, with the intent to kill, injure, harass, intimidate, and place under surveillance with the intent to kill, injure, harass, and intimidate another person, used an interactive computer service, an electronic communication system of interstate

commerce, and any other facility of interstate commerce to engage in a course of conduct that (i) placed that person, that is, Victim 1, in reasonable fear of the death and serious bodily injury to himself and his spouse and intimate partner, and (ii) caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that person, that is, Victim 1, and his spouse and intimate partner, that is, Victim 2.

All in violation of Title 18, United States Code, Sections 2261A(2).

### COUNT SIX:  [18 U.S.C. §  924(c)(1)(A)]

Paragraphs 1 through 11 of the Introduction section of this indictment and paragraphs 1 through 42 of Count One of this Indictment are realleged and incorporated into this Count, as if fully restated herein.

The Grand Jury charges:

That on or about June 18, 2018, in Walker County, within the Northern District of Alabama, the Defendants,

**TIERZAH MAPSON, ELISA MAPSON, and CHARIS MAPSON,**

knowingly possessed and discharged a firearm in furtherance of a crime of violence for which they may be prosecuted in a Court of the United States, that is, Interstate Domestic Violence as charged in Counts Two and Three of this Indictment, and Stalking, as charged in Counts Four and Five of this Indictment, in violation of Title

18, United States Code, Section 924(c)(1)(A)(iii).

A TRUE BILL

*/s/ Electronic Signature*

_____
FOREPERSON OF THE GRAND JURY

                              JAY E. TOWN
                              United States Attorney

                              */s/ Electronic Signature*

                              _____
                              ALAN BATY
                              Assistant United States Attorney